EMIL W. SCHAUSTEN, ADMR. v. THE TOLEDO CONSOLIDATED ST. RY. CO.

NEGLIGENCE OF PERSON IN DRIVING UPON AND ATTEMPTING TO CROSS THE TRACKS OF A STREET RAILWAY.

In this case the decedent was guilty of negligence in driving upon and attempting to cross the track of a street railroad under all the circumstances attending the attempted crossing without looking to see if the cars were coming.

HAYNES, J.

A petition in error is filed in this case by Emil W. Schausten, an administrator, for the purpose of reversing the judgment of the court of common pleas in an action which was brought by Schausten, as administrator of Wm. Gerlach, against the Toledo Consolidated Street Railway Company, for alleged negligence causing the death of said Gerlach. The case was tried before the court and jury. A verdict was rendered in favor of the defendant company, a judgment rendered on that verdict by the court, and this case is brought here to reverse that judgment.

The facts surrounding the accident, as disclosed by the record, briefly stated, are these: Gerlach and a man named Butcher were employees of the Toledo Electric Company. Butcher was a night inspector, whose duty it was, in the night season, to go around through the different parts of the city and observe the city lights, and if any of them were found out of order or not burning, he was to attend to them. While on his rounds in the performance of this duty, it seems he met Mr. Gerlach, who seemed to have had a good deal of interest in the electric lights —being an employee of the same company with Butcher—and he concluded he would accompany Butcher and accordingly got into the buggy with him (which buggy, I think, belonged to the Electric company) and the two men then proceeded together about the business that Butcher had in hand. About 10:30 in the evening, or possibly a little later, they came on to Summit street and observed that the electric light located near the westerly end of the Cherry street bridge was not burning, and they thereupon drove down said street, upon the northeasterly side of it, to a point about thirty feet from the end of said bridge, driving up to the curbstone there and Butcher alighting and proceeding to climb the electric light pole and to adjust the light which he soon succeeded in doing, and he then returned to the buggy. As he came to the buggy and proceeded to get into it, Gerlach, who had driven the horse down there, was sitting in the buggy still holding the reins having charge of the horse. As Butcher stepped into the buggy the horse started— before Butcher had got his seat—started ahead a little, so that, as Butcher testifies, he had got down within ten feet of the bridge before it commenced to turn to go across the track—as they intended to turn at that point in the street. There was no room to turn between the curbstone and the nearest track of the street railway and thus it would be necessary in turning to cross the track, and perhaps both tracks, of the defendant company. As the horse tuened ond got somewhat on to the northeasterly track, the parties in the buggy suddenly discov-

ered that an electric car was coming across the bridge. Butcher, perhaps, spoke of stopping the horse and attempting to look to see if they could back the horse, but found that they could not, because there was not room, on account of the proximity of the curbstone, and so, he says Gerlach whipped up and tried to get across. The horse passed over the northeasterly track and was on the space between the two tracks—or nearly so—perhaps his hind feet still remained within the rails of the northeasterly track, and the forepart of the buggy was still on the track, when the car struck them. The car struck the buggy and 'slewed'' it around—turned it around—in a northwesterly direction over towards the other track. Butcher, who was upon the left hand side of the seat—nearest the car—was thrown towards the car, struck his head and shoulders against one of the windows and broke it, and then, by this impact was thrown back into the buggy. Gerlach was thrown out, or went out of the buggy, as the car struck it, still holding the reins. The horse was frightened—indeed seemed to have been somewhat excited before the car struck him—for he seems to have been dancing upon the track and doing more dancing than going ahead—and he immediately turned on the northwesterly side of the car and proceeded towards the bridge, and it seems that Butcher at the same time leaped from the buggy and pursued the horse. Another car was said to have passed down—or passed this point going towards the bridge, just a moment before this accident occurred, and the horse was stopped by some person upon the bridge and Butcher secured it and returned with it to the place of the accident. Gerlach was picked up and assisted to a telegraph pole, some little distance from that point, and later was taken into a saloon, where his wounds—which were about the head—were attended to temporarily; from the saloon he walked to Dr. Fisher's office—on Erie street—from the doctor's office he was taken home, where he languished some ten days and died on the 14th of April, this accident having occurred on the 4th of that month.

The petition sets forth as a cause of action that the defendant was driving and propelling said street car at a very high and dangerous rate of speed; that those in charge failed to ring any bell or sound any gong, and that plaintiff, being without any fault on his part, was thereby injured.

It is answered on behalf of the defendant, that decedent was injured by his own negligence.

The case has been argued very earnestly by counsel for plaintiff, who claim that the court should have sustained the motion made for a new trial, on the ground that the verdict was not sustained by sufficient evidence; and it is also very earnestly contended by them that the testimony of witnesses and the facts in the case show that there was negligence on the part of the railroad company, and no fault on the part of plaintiff's decedent. We have given very careful attention to the testimony and read it all through, and are of opinion that the court of common pleas was right in refusing to set aside the verdict and in not sustaining the motion for a new trial, upon the facts of the case.

There were some conflicting and contradictory evidence. There were two ladies and a young girl upon the car, and they have given testimony tending to show that the car was running at a very rapid rate of speed—something like 40 miles an hour—I think. There is a great difference in the testimony as to *where* the car was stopped. The conductor claims that the car was stopped within a car-length, and that when the car was stopped he was—as he had been—standing in the rear

of the car and that Gerlach was lying on the ground opposite the rear end of the car and that he assisted him to the telegraph pole. One of the ladies testified that she got out of the car and went to the telegraph pole, and she insists that that was where he was thrown to. She testifies that she was looking out of the window and that he was whirled through the air and struck the ground over near the curbstone on the other side—quite a long distance from where the car was—and was lying at a point near the telegraph pole and that that was where he had alighted from the result of the collision. It is very evident that the ladies were very much frightened or excited, and their testimony is to be taken with a great degree of allowance in that respect. They testified in regard to the motions of the horse after the buggy was struck by the car, and it is quite evident that they are very wild in their story, for they testified that the horse passed the car, going towards the bridge, upon the easterly side of the car instead of the westerly side, where the horse and buggy were located by Mr. Butcher, who was in the buggy, which proves very conclusively, we think, that the horse could not have passed around to the easterly side of the car, but that, in the natural sequence of events, he would have passed along the westerly side of the car. At any rate, the case was fairly submitted to the jury and the jury found that the plaintiff had no case.

In regard to the contributory negligence of the plaintiff; the witness, Butcher, is not in the employ of defendant at the present, nor has he been for quite a long time—and he seems to have given his testimony very fairly and very carefully so far as he remembers—at least that is the impression given by his testimony upon the record. He testifies that he climbed up this pole facing the east—that when he got up there he swung his face somewhat around towards Summit street and fixed the lamp and got down to the ground and got into the buggy, without himself looking at all towards the bridge to see whether any car was coming; and so far as the testimony discloses neither of these parties looked towards the bridge at the time they started to turn back and thus brought themselves across the track of the railroad. That car was lighted, of this there can be no doubt. The parties all testify that the car was lighted—that there were lights in the upper part of the car and that it was lit by electricity, so that the light was shining through the ventilators in the upper part and also through the windows. Considerable testimony had been taken as to how far you could see a car upon that bridge, coming across it. The main part of the bridge comes straight across until it reaches this end of the first span, this side of the draw, and then there is a curve in the bridge itself and in the street and there is from that point out, a framework of iron upon either side of the bridge. The bridge has a path upon each side for foot passengers, and iron railing between the foot path and the railroad track. The tracks of the street railroad, occupy a little over four and a half feet; and then there is a strip between the two tracks of the railroad, of ten feet, furnishing a passage for teams, and that extends on through from the bridge up Cherry street so that teams coming down come down between the two tracks and across the bridge between the two tracks of the railroad. It is very evident, from the testimony, that if these persons had looked, from the position that they occupied they could have seen the car far out upon the bridge—by looking a little to the left of this iron railing of which I have spoken. The railing itself is so filled in with a network that you cannot see so clearly through

it, but can see for some distance and get a glimpse of the windows of the cars as the cars are approaching; so that there would have been no difficulty, if they had looked, in seeing that this car was coming. Five or six hundred feet away where the electricity goes down under the bridge, in the ordinary course of business there is a break in the connection, and there was testimony tending to show that usually and in the ordinary course of business the cars stop there. There is no testimony, however, showing that this particular car did stop there that night, but the testimony of those in charge of the car is that it was proceeding at the rate of perhaps about five miles an hour. We think the jury were warranted in finding that these parties did not look at all towards the bridge at the time they started; and we think if they *had* looked they would have observed this car before they started, or in sufficient time to have prevented them from being on the track in front of the car.

So that we find that there was no error in the action of the court of common pleas in overruling motion for a new trial. So far as it relates to the ground that the verdict was not sustained by sufficient evidence, we think the jury thought they were warranted in finding from the facts of the case in favor of the railroad company.

Some exceptions have been taken to the charge of the court. I will read one of them—for it is of general character of the charge excepted to:

"Ordinarily, the burden of proving contributory negligence rests upon the defendant, but if from the facts found by the jury from plaintiff's own evidence and the circumstances of his injury as appears from the evidence offered on plaintiff's behalf, the presumption fairly arises that the said William Gerlach was himself negligent, and that his negligence contributed to the injury which he received, then the burden rests upon the plaintiff to remove this presumption of contributory negligence by a preponderance of the evidence. In this case, if the jury find from the plaintiff's own evidence—that is, from the evidence offered on behalf of the plaintiff—that the said William Gerlach knew, or had the means by the exercise of ordinary and reasonable prudence and caution, of knowing the danger at that time and place from the passing of electric cars of the defendant, and knowing that such cars were passing that place at short intervals, suddenly drove, (and without exercising such ordinary and resonable prudence and caution) upon the track of the defendant, in front of and near to an advancing car of the defendant, without looking or listening for such advancing car, or endeavoring to learn whether or not it was approaching, and that his so doing directly and proximately contributed to cause the injury complained of in the petition, then the presumption fairly arises from such facts that William Gerlach is himself guilty of contributory negligence which contributed to his injury."

There is no written brief on behalf of plaintiff in error, but in his oral arguments counsel claim that that clause is faulty, in that it states that the decedent knew that the cars were coming or perhaps saw them. We think the charge of the court states the law correctly. We have had cited to us the case of *Lake Shore and Michigan Southern Ry. Co.* v. *Geiger*, 4 C. D., 307, a case that was decided by this court in Wood county, as perhaps stating the law more in accordance with the claims of counsel for plaintiff; but we are very familiar with that case and we see nothing in it which supports the position that counsel claims for it.

The law of the case in regard to parties upon the street, and companies in charge of street railways, in regard to negligence, has been under consideration of the supreme court of this state, and a decision has been rendered by a majority of that court—four out of six concurring—which may be found in 54 O. S., 197; it being the case of *Cincinnati Street Ry. Co.* v. *Snell.* I will read two or three of the syllabi:

"The introduction of new forms of vehicles, and of new motive power or street railways, has not impaired the right of the foot passengers to safe passage at street crossings. It is the duty of drivers of vehicles, whether wagons, wheels or cars, to so regulate the speed thereof, and give such warning of approach, at whatever cost, pains and trouble on their part, as that the footman, using ordinary care himself, may, in the absence of unavoidable accident, cross in safety.

"When a street railway company operating a double track road discharges a passenger at a street crossing, having reason to know that such passenger, in order to reach his destination, must cross its tracks, it is the duty of such company to regard the rights of the passenger while on the crossing, and to so control the speed of cars on its tracks, and give such warning of their approach, as will reasonably protect the passenger from injury. Omission of such duty is negligence, and a person injured by reason thereof may maintain an action against the company for damages unless prevented by his own negligence contributing to the injury.

A person about to cross the track of a street railway at a street cossing is bound to exercise care proportioned to the danger to be avoided and the consequences which might result from want of it, conforming in amount and degree to the particular circumstances surrounding him; but it is only ordinary care which is required, that which might reasonably be expected of persons of ordinary prudence. Ordinary care does not require him to anticipate negligence on the part of those operating the railway. And while he should use his faculties for his own protection, it is not negligence *per se* for him to omit to look in both directions for the approach of a car. Whether it is or not negligence depends upon the circumstances."

In that case a passenger upon a street car in Cincinnati had alighted upon a crossing, from a car which was going east. He stepped off on the south side of the south track and turned to go north, as he lived on that side, and this required him to cross the other track, upon which there was a car coming, it is said at the rate of 20 miles per hour. He merely saw the latter car in time to throw up his hands and try to step back, but was run over. Upon the trial of the case, upon these facts, the court directed a verdict for the defendant street railway company. That action was reversed by the supreme court, upon the ground that it being a question of fact as well as of law, the facts should have been submitted to the jury upon the question of negligence. But these principles that have been stated here are stated in connection with that state of facts. In the case at bar there was no crossing. Vehicles ordinarily came down the street between the two tracks and so down and upon the bridge, and I suppose the motorman standing in front of his car and looking out for vehicles, would be looking in that direction. Foot passengers would come down on either side and pass upon the bridge by the side walk or foot ways of the bridge and not cross the main tracks at all, as the sidewalk leads directly to the sidewalk on the bridge. Testimony was given to show that a buggy, standing as that one was,

near the curbstone, could not be seen by the motorman coming from the east across the bridge, until they came up to a point near the west end of the bridge. The place near which this accident happened was where there was located a business establishment or foundry, and it might be supposed that sometimes teams would be standing in front of the foundry in the day time; but this was at 11 o'clock at night, and the motorman was passing along in the usual and ordinary manner, as he claims, and suddenly this wagon appeared directly in front of him upon the track. From the weight of the evidence in the case—from the testimony as to all the surroundings—we think it is difficult to see that there was any negligence on the part of those in charge of this car, and we think it was shown that they were proceeding in a fairly careful and prudent manner, and we think that the plaintiff's decedent was lacking in ordinary care and prudence in turning upon that track upon which street cars were passing very frequently, without looking or observing to see whether the cars were coming. He himself was a man accustomed to perform this same class of duties, had been around the city a great deal and at times in the vicinity of this bridge, and it is fair to presume that he had knowledge of the fact of the street cars passing and repassing that point. The judgment of the court of common pleas will therefore be affirmed.

*Hamilton & Kirby*, Attorneys for Plaintiff in Error.
*Smith & Baker*, Attorneys for Defendant in Error.